FILED

2012 Mar-22  AM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| DAVID LEDBETTER; RAYMOND L. BURNETTE, JR.; RICHARD CURTIS; FORREST SCOTT FIKES; DENNIS FINNEN; KENNETH GAMBLE; RICHARD E. GONZALEZ; JIMMY HUDSON; CLINTON M. JOHNSON; TIMOTHY JONES; DENNIS O. KENNEDY; JEFFREY L. McALLISTER; TIMOTHY A. NICHOLS; MAURICE E. PHILLIPS; REX ROBERTSON; DANNY R. SIMMONS; BRAD WALKER; MARTY J. WEAVER; CLYDE T. WHITLEY; DONALD R. WILLIAMS; LYNN WILSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Number  7:10-CV-0467-SLB |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | |
| MERCEDES BENZ U.S. INTERNATIONAL, INC., | ) ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case is currently before the court on plaintiffs' Motion to Strike the Declaration of Michael Nicoll or Portions Thereof, (doc. 24),[1] and their Motion for Circulation of Notice of the Pendency of this Federal Overtime Collective Action Pursuant to 29 U.S.C. § 216(b),

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

(doc. 32).[2] Upon consideration of the record, the submissions of the parties, the relevant law, and the arguments of counsel, the court finds that plaintiffs' Motion for Circulation of Notice, (doc. 32), is due to be denied, and their Motion to Strike, (doc. 24), is due to be granted in part and denied in part.

## I. <u>MOTION TO STRIKE</u>

In the Motion to Strike the Declaration of Michael Nicoll or Portions Thereof, (doc. 24), plaintiffs argue that the Nicoll Declaration, (doc. 22-1), "is not based on personal knowledge and contains inadmissible hearsay," (doc. 24 at 1-2).   Plaintiffs rely on various authorities for the proposition that an affidavit or declaration filed in support of or in opposition to a Motion for Circulatiuon of Notice must be based on the personal knowledge of the affiant and cannot contain inadmissible hearsay.  (Doc. 24 at 2-3.)  The court assumes that Nicoll's Declaration must meet the standards for affidavits and declarations filed in support of and in opposition to Motions for Summary Judgment.  *See* Fed. R. Civ. P. 56(c)(4).[3]

Pursuant to Rule 56(c)(4), "An affidavit or declaration used to support or oppose a motion [for Summary Judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

---

[2]Plaintiffs filed their Brief in Support of [Their] Motion for Circulation of Notice of the Pendency of this Federal Overtime Collective Action Pursuant to 29 U.S.C. § 216(b), (doc. 19), on September 1, 2010.  They filed the Motion for Circulation of Notice, (doc. 32), almost three months later on November 30, 2010.

[3]Former Fed. R. Civ. P. 56(e).

testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see also McCaskill v. Ray*, 279 Fed. Appx. 913, 914-15 (11th Cir. 2008)(citing *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).

### 1. Lack of Personal Knowledge

Plaintiffs contend that, "[o]ut of Nicoll's 77 paragraph declaration, the only statements that are based on his personal knowledge as an Engineering Manager of the Body and Paint Shop are paragraphs 10 through 12," and that "[t]he rest of his statements refer to the experience of Maintenance Team Members throughout other departments at the Mercedes facility, including but not limited to their hours of work, pay rate, and disciplinary records." (Doc. 24 at 3.)  According to plaintiffs, "[a]s an Engineering Manager in the Paint and Body Shop, Nicoll is simply unqualified to make such broad reaching declarations." (*Id.* at 4.)  In response, defendant contends that plaintiffs' assertion is without merit because "Mr. Nicoll stated in his declaration that he has personal knowledge of the matters contained in his declaration," and because "as a member of management at MBUSI, Mr. Nicoll certainly knows about the operations of this facility."  (Doc. 25 at 2-3.)

Nicoll testified that his Declaration is based on his "personal knowledge of the matters contained" therein.  (Doc. 22-1 ¶ 1.)  Although plaintiffs contend that Nicoll could not have personal knowledge of all the things he testifies to in his Declaration, they do not point to any specific incorrect or inaccurate statement; they only contend that Nicoll could not possibly know about operations outside the Paint and Body Shop.  Such a conclusory statement is an

insufficient ground for striking the Declaration.  *See Martin v. Rumsfeld*, 137 Fed. Appx. 324, 326 (11th Cir. 2005)(holding that the district court "was bound to accept" an affiant's statements regarding personal knowledge as true, "unless the context demonstrated otherwise[,]" where the affiant "represented at the beginning of the affidavit that the statements therein were 'made on [her] personal knowledge,' and did not otherwise qualify the statements at issue as being based on anything other than her personal knowledge.") (citations omitted)(unpublished).[4]

"An affiant . . . may have personal knowledge of activities in which she has not actually participated." *Hamilton v. Trover Solutions, Inc.*, 104 Fed. Appx. 942, 944 (5th Cir. 2004)(citation omitted)(unpublished).  "This includes situations where a manager of an organization can glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records."  *Id.* (citation omitted).  Defendant identified Nicoll in its initial disclosures as a person with knowledge of facts or issues in the case, and, specifically, with knowledge of defendant's pay practices, its organizational structure, and plaintiffs' job duties.  (*See* doc. 25-1 at 4.)  "According to the Federal Rules of Evidence, personal knowledge can be established by showing that the witness was in a physical position to see, hear, or otherwise perceive the matters to which the

---

[4]"Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2, *quoted in Borden v. Allen*, 646 F.3d 785, 808 n.27 (11th Cir. 2011)

testimony relates." *Johnson v. Scotty's, Inc.*, 119 F. Supp.2d 1276, 1281 (M.D. Fla. 2000)("The Court finds in this case that Lucille Johnson was an employee of Defendant for over twelve years, and, thereby, was in a position to observe operational changes concerning work scheduling and job responsibilities."). Plaintiffs have not directed the court to any facts or authority to show that Nicoll is unqualified to provide "general statements regarding Mercedes' operations at the Vance Alabama facility" or to otherwise show that Nicoll had no personal knowledge of facts outside the Paint and Body Shop.

Therefore, their Motion to Strike NIcoll's Declaration as not based on personal knowledge will be denied.

### 2. Inadmissible Hearsay

Plaintiffs contend that Nicoll's statement  – "MBUSI informed Maintenance Team Members that they could turn their radios off during lunch," (doc. 22-1 ¶ 68) – is hearsay. (Doc. 24 at 4.)  They contend that defendant "is clearly offering Nicoll's declaratory statement as truth that Mercedes changed its written policy requiring maintenance employees to carry radios and answer calls during lunch."  (*Id.* at 5.)  In response, defendant contends that Nicoll's statement is not hearsay because "Mr. Nicoll did not testify in his declaration about a particular statement made by a particular person, but simply provided the history of MBUSI's policy on wearing radios during lunch."  (Doc. 25 at 5-6.)

The court notes that Nicoll's testimony concerns defendant's policy regarding wearing radios at lunch.  Plaintiffs do not object to the deposition testimony of five plaintiffs that they

were told they could turn off their radios at lunch.  (*See* doc. 22-3 at 59; doc. 22-7 at 191-92; doc. 22-8 at 80-81; doc. 22-9 at 66-67; doc. 22-17 at 92-93.)  For purposes of deciding plaintiffs' Motion for Notice, the court will not consider ¶ 68 of Nicoll's Declaration, but it will consider the plaintiffs' deposition testimony to the same effect – that a number of the plaintiffs were told that they could turn off their radios at lunch.

Based on the foregoing, plaintiffs' Motion to Strike,(doc. 24), will be granted as to ¶ 68 of Nicoll's Declaration.

## II. <u>MOTION FOR CIRCULATION OF NOTICE</u>

### A.  STATEMENT OF FACTS

According to their Amended Complaint,

> Plaintiffs seek to represent a class of all employees of Defendant, who at all relevant times were employed as full-time hourly, non-exempt maintenance employees by Defendant at the Vance Plant, and who were the victims of the same illegal policy and practices of failing to be paid for all hours worked and resulting overtime  . . . .

(Doc. 18-1 ¶ 6.)  The original Complaint named fifteen plaintiffs; the Amended Complaint added seven additional named plaintiffs.  (Doc. 1; doc. 18.)

Plaintiffs allege the following facts in support of their Motion for Circulation of Notice:

> The lunch breaks for hourly employees is the center of this lawsuit. There is no dispute that [defendant] provides 45 minutes a day for unpaid lunch breaks.  As illustrated by [defendant's] "Team Member Handbook" [, (doc. 28 at 9),] . . . "The normal workweek for all full time Team Members is forty (40) hours, Monday through Friday [. . . .]"  Continuing on page 25, the manual states that the "shift schedules are as follows:   REGULAR

PRODUCTION SCHEDULE, Days . . . 6:15-3:00 PM, Evenings . . . 4:15-1:00 A.M.[5]  The shift includes a 45-minute unpaid lunch, and two (2) fifteen (15) minute paid breaks.  To allow some flexibility for production schedules in the event of equipment problems or parts delivery, lunch times and breaks may be started early or delayed temporarily."  However, the employees must wear and answer pagers/radios during lunch and must stop lunch to perform work when called.  They are not relieved of duties during lunch/meal time.

(Doc. 19 at 4-5 [original footnote omitted; footnote added].)

In 2004, Paint Maintenance Team Members filed internal Concerns Resolutions, taking the position that wearing their radios during the lunch period placed defendant under an obligation to pay them for their meal breaks even when they performed no affirmative work activity during that time.  (Doc. 22-1 ¶ 61; *see also id.* at 15.)  In response, defendant, in a Memorandum from Arthur Williams, Human Resources – Employment/Team Relations, stated:

Paint Maintenance Team Members are required to carry the radio and answer calls during lunch. This is the practice we follow in these circumstances:

1.  If the call requires the whole lunch period to repair, then the Team Member is paid for the lunch period.  This is an additional .75 hours added to the workday.

2.  If we interrupt a Team Member's lunch, we will pay the Team Member .75 hours or he or she will have the option of taking an uninterrupted 45-minute lunch.

(Doc. 22-1 at 15.)

---

[5]Maintenance employees work three shifts.  (Doc. 28 at 9.)

The same issue was discussed again with the Paint Maintenance Team Members in 2006 in a Memorandum from Stephanie Lockhart.  (Doc. 22-1 ¶ 63; *see id.* at 17-18.)  The Lockhart Memorandum provides:

> 7.  Still a concern of having to wear radio during lunch and not being paid if they are not called off their lunch.  [Team Members] feel they are still having to wear a radio during lunch and not being paid if they are not called off their lunch. [Team Members] feel they are still having to perform a job duty by wearing the radio.  Are they restricted from leaving the shop or plant during lunch?
>
> • The Company still supports the memo dated August 31, 2004, which states:
>
>   • Paint Maintenance Team Members are required to carry the radio and answer calls during lunch. This is the practice we follow in these circumstances:
>
>     1.  If the call requires the whole lunch period to repair, then the Team Member is paid for the lunch period.
>
>     2.  If we interrupt a Team Member's lunch, we will pay the Team Member for lunch or he or she will have the option of taking an uninterrupted 45-minute lunch
>
> • Below are additional points
>
>   • If the [Team Member] cannot get a 45-minute uninterrupted lunch, they will be paid for lunch
>
>   • [Team Members] must wear their radio during lunch
>
>   • If a [Team Member] chooses to leave the plant during lunch, their area must be covered by their counterpart. They must also notify their [Team Leader] and/or [Group Leader] they are leaving.

8.    If a [Team Member] works through lunch, should they be paid .8 or .75 for 45 minutes?  Some [Team Members] put down .75 and others .8.

(Doc. 22-1 at 18.)

"In 2007, Paint Maintenance Team Members filed another Concerns Resolutions because they wanted a set time for lunch and they wanted to leave work early if they were unable to take a lunch."  (Doc. 22-1 ¶ 64; *see id.* at 20.)  In response to the 2007 Concerns Resolutions, defendant, in a Memorandum from Rolf Wrona, again explained its position:

The purpose of this memo addressing O/T [overtime] requests for working through lunch is to insure fair and equal treatment to all . . . maintenance team members that have a need to work through their lunch.

The position of management is that all team members should if possible take a 45 minute lunch during their shift.

To achieve this goal the team member and T/L [team leader] will work to schedule a time during their shift that the team member will be given an opportunity to have lunch. If the team member does not have [an] opportunity to have a 45 min[ute] lunch during this period they will be paid .8 hours for the overtime work performed.

When due to work load there is an occasion in which a team member is unable to achieve the goal of a lunch period, the following procedure should be followed.

Before the end of the shift that a lunch was missed the team member will fill out an O/T request form stating the reason the team member was unable to have their lunch period.

The T/L will initial the O/T request form on a daily basis.

The O/T request form will be given to the G/L [group leader] for review on a weekly basis.

9

(Doc. 22-1 at 20.)  Sometime after 2007, some Maintenance Team Members were told they could turn off their radios during their meal break.  (*See* doc. 22-3 at 59; doc. 22-7 at 191-92; doc. 22-8 at 80-81; doc. 22-9 at 66-67; doc. 22-17 at 92-93.)

Plaintiff David Ledbetter testified in his Declaration:

I [have been] employed by Mercedes Benz USI, as a maintenance worker since December 1, 1997.  It is the policy of MBUSI that all maintenance workers had significant responsibilities during unpaid lunch breaks.  In my experience, I was penalized for putting in for compensation if I work during the lunch.  In addition,

•       I am required to wear a radio during the day to answer calls for repairs and I must wear the same radios during lunch.

•       I would get called just about every day on the radio.  Sometimes I could answer the questions on the radio, but most of the time, I have to end my lunch and go to fix a problem on the line.

•       I am restricted as to when the lunch break could be taken;

•       I can't leave the plant during lunch.  MBUSI fired Jeff McAllister for leaving the plant at 2 pm to take a lunch break.[6]

•       Maintenance worker, Randle, was written up for telling management he would not answer their questions during the 45 minutes he was eating lunch.

•       Despite the policy, I am not allowed to leave the job site because there is never anyone to find to replace me on site during lunch.

•       I usually eat my lunch in plant as I walk around or in the break area.  There is no television, no games, no way to run errands, and contractors and other people constantly come to me during lunch to sign for orders or talk to me

---

[6]Defendant presented evidence that McAllister was not fired for leaving the plant, and that no Maintenance Team Member has been terminated or disciplined for leaving the plant during their meal break.  (Doc. 22-19 ¶ 2.)

about work. The production workers and engineers are constantly interrupting, and we are required to take our breaks in places where they can have access to us at any time. If I were to go to the cafeteria it would take me 15 min[utes] to walk there and back to the paint [shop].

•      Other employees are not asking for pay because of harassment and intimidation.

(Doc. 19-1 at 2-3 [footnote added].) Unlike Ledbetter's testimony in his Declaration, other plaintiffs employees testified that they are not interrupted constantly. (*See* doc. 22-8 at 33, 50; doc. 22-12 at 49, 56; doc. 22-16 at 76-77; doc. 22-17 at 127-28; doc. 22-18 at 47, 122-23; *see also* doc. 22-10 at 92 [Ledbetter testified in his deposition that his meal break was interrupted three times a week].) Some testified that they use the meal break to make personal phone calls, read the newspaper, work crossword and Sudoku puzzles. (*See* doc. 22-3 at 79; doc. 22-4 at 83; doc. 22-6 at 66; doc. 22-9 at 73; doc. 22-12 at 63; 22-15 at 54.) Some plaintiffs testified that they are paid for interrupted meal breaks. (Doc. 22-2 at 100-101; doc. 22-4 at 49; doc. 22-5 at 58, 61; doc. 22-15 at 57, 63.) Some plaintiffs testified that they were not restricted as to where they could take their meal breaks. (*See* doc. 22-2 at 106, 107; doc. 12-5 at 44; doc. 22-8 at 33; doc. 22-9 at 58; doc. 22-15 at 52.) A couple of plaintiffs testified that they did not tell their Maintenance Team Leader or Manager when they left for a meal break. (*See* doc. 22-3 at 73; doc. 22-6 at 66.)

## B. DISCUSSION

"The FLSA authorizes collective actions against employers accused of violating the FLSA. Section 216(b) provides that '[a]n action . . . may be maintained against any employer

. . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.'" *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008)(quoting 29 U.S.C. § 216(b))(internal citations omitted).  Therefore, "[t]he key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Id*. at 1259.  The Eleventh Circuit has "emphasized that before facilitating notice, a 'district court should satisfy itself that there are other employees . . . who desire to "opt-in" and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions.'" *Id*. (quoting *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567 (11th Cir.1991)).

### 1.  Other Employees Desire to Opt-In

Plaintiffs contend that the seven additional named plaintiffs added to this case is evidence that other Maintenance Team Members desire to opt-in.  However, these seven individuals were added as party-plaintiffs.  (*See* doc. 18-1.)  Plaintiffs have presented no evidence that other maintenance employees, who have not been named as plaintiffs, desire to opt-in.  (*See* doc. 19-1; doc. 28.)

Therefore, plaintiff's Motion for Circulation of Notice, (doc. 32), is due to be denied.

### 2.  Similarly-Situated

Assuming plaintiffs could show that other Maintenance Team Members desire to opt-in, the second inquiry is whether the proposed class consists of similarly situated individuals.  The Eleventh Circuit has held that, to satisfy the "similarly situated" requirement, "[p]laintiffs

need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp v. Liberty National Life Ins.*, 252 F.3d 1208, 1217 (11th Cir. 2001)(quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996))(internal quotations and citations omitted).  "A unified policy, plan, or scheme . . . may not be required to satisfy the more liberal 'similarly situated' requirements of § 216(b)." *Id.* at 1219 (internal quotations omitted)."  However, the "more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Morgan*, 551 F.3d at 1261 (citing *Anderson v. Cagle's*, 488 F.3d 945, 953 (11th Cir. 2007).  Factors that the court may consider are the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* (citation, alterations and internal quotation marks omitted).  Because the court allowed the parties the opportunity to conduct discovery, plaintiffs must show that the similarities "extend beyond the mere facts of job duties and pay provisions and encompass the defenses to some extent." *Id.* at 1262 (citation and internal quotation marks omitted).

In this case, plaintiffs contend –

Maintenance workers, like Plaintiffs and those they seek to represent, had significant affirmative responsibilities during unpaid lunch breaks, including but not limited to:  wearing radios or other communication devices on their person such that they could be, and were, frequently called to duty including physically moving to another location for work or answering maintenance questions during the break; restricted as to when the break could be taken; not allowed to leave the job site; not alleged to schedule a set time for the unpaid lunch break; not allowed to play games; not allowed to watch

television; prohibited from running personal errands; generally limited in the types of activities they could engage in; and/or subject to immediate recall during their breaks.

(Doc. 18-1 ¶ 10.)  Defendant has presented evidence that Maintenance Team Members are paid for any interrupted meal break.  (*See* doc. 22-2 at 100-01; doc. 22-4 at 49; doc. 22-5 at 58, 61; doc. 22-15 at 57, 63.)  Moreover, it contends that Maintenance Team Members are unrestricted as to how they may spend their meal breaks.  Plaintiffs, in Reply, argue:

> Conspicuously absent from [defendant's] 48 page response is any refute of the two relevant facts at issue:  (1) Plaintiffs and potential opt-in plaintiffs hold the same employment position[s] – they are all non-exempt maintenance employees at [defendant's] Vance facility – and (2) Plaintiffs and potential opt-in plaintiffs were required to carry radios and answer calls during their meal periods.[7] . . . These are the crucial facts for purpose of circulating notice.  Indeed, these are the only two facts that matter in determining whether the potential opt-in plaintiffs are similarly situated.

(Doc. 23 at 6 [footnote added].)  In support of their Motion for Notice, plaintiffs filed only Ledbetter's Declaration as evidence of how Maintenance Team Members actually spent their meal breaks.[8]

---

[7]As set forth above, some plaintiffs testified that they are not required to carry their radios or to be on-call during their meal break.  (*See* doc. 22-3 at 59; doc. 22-7 at 191-92; doc. 22-8 at 80-81; doc. 22-9 at 66-67; doc. 22-17 at 92-93.)

[8]Plaintiffs filed deposition excerpts from Gamble, (doc. 23 at 22-32); and Johnson, (*id*. at 34-36), with their Reply.  However, because plaintiffs have not offered any reason why this evidence could not have been filed with their Brief in Support of Their Motion for Circulation of Notice, (doc. 19), and because defendant did not have an opportunity to address this evidence, the court has not considered it.  *See Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1076 (5th Cir. 1980)(citing *Beaufort Concrete Co. v. Atlantic States Construction Co.*, 352 F.2d 460, 462 (5th Cir. 1965), *cert. denied*, 384 U.S. 1004 (1966); *Woods v. Allied Concord Financial Corporation (Del.)*, 373 F.2d 733, 734 (5th Cir. 1967)).  Nevertheless, consideration of this evidence would not change the court's decision.

14

Whether plaintiffs' meal breaks are a "bona fide meal period," and, therefore, not compensable under 29 C.F.R. § 785.19,[9] is a question of fact. *See Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1306-07 (N.D. Ala. 2008); *Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375, 1379 (S.D. Ga. 1997). "The central issue in mealtime cases is whether employees are required to 'work' as that term is understood under the FLSA," which is, necessarily, a question of fact. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 64 (2d Cir. 1997)(citing, *inter alia*, *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37 (1944)); *see also Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 and n.19 (11th Cir. 1990).

---

[9]Section § 785.19 provides:

(a)  Bona fide meal periods.  Bona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. . . .

(b)  Where no permission to leave premises.  It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19

Carrying a radio or being on-call is not dispositive of whether the meal break is compensable work time. However, even if simply carrying a radio is sufficient to deem the plaintiffs to be "working" during their meal break, some plaintiffs testified that they are not required to carry radios or have their radios on during lunch. (*See* doc. 22-3 at 59; doc. 22-7 at 191-92; doc. 22-8 at 80-81; doc. 22-9 at 66-67; doc. 22-17 at 92-93.) Also, as set forth above, plaintiffs testified to various levels of restrictions on their meal breaks. Therefore, for each plaintiff, the court must determine, *inter alia*, the dates that plaintiffs worked, the number of lunches for each plaintiff in which he wore a radio, other limitations on plaintiff's meal break, work actually performed during the meal break period, whether or not each plaintiff was compensated for his meal break, the total amount of hours worked in a given week, and any amount due as unpaid minimum wage and unpaid overtime. Whether or not meal breaks are compensable work is not determined simply by whether plaintiffs were required to wear their radios. It is a highly individualized factual determination. For all these reasons, the court finds that plaintiffs and the proposed opt-in class are not similarly situated and plaintiffs' Motion for Circulation of Notice, (doc. 19), is due to be denied.[10]

## C.  TOLLING

Plaintiffs ask the court "to toll the statute of limitation for [potential opt-in plaintiffs] to join this action while [their Motion for Circulation of Notice] is pending." (Doc. 19 at 2;

---

[10]Because the court finds that plaintiffs are not similarly situated, it pretermits discussion of whether issuing notice would be futile due to Maintenance Team Members' actual pay. (*See* doc. 21 at 23-31.)

doc. 23 at 18-19.)  "[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action."  *Grayson*, 79 F.3d at 1086.  "Once an individual opts in to an FLSA collective action, the statute of limitations is tolled from the date the consent form was filed, but if the court later denies certification of the collective action and dismisses the opt-in plaintiffs, the statute of limitations resumes upon that dismissal."  *In re Tyson Foods, Inc.*, MDL Docket No. 1854, No. 4:07-MD-1854 (CDL  2008 WL 4613654, *2  (M.D. Ga. Oct. 15, 2008)(citing *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380 (11th Cir. 1998)).

In this case plaintiffs have offered "neither legal authorities nor argument for this request."  *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1243 (S.D. Ala. 2008).  Therefore, "To grant that Motion, the Court would either have to take Plaintiffs' word for it that equitable tolling is appropriate in these circumstances, or to conduct Plaintiffs' research and articulate their arguments for them.  Neither approach is acceptable . . . ."  *Id*. (citing *Grayson*, 79 F.3d at 1106; *Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2008 WL 700174, *5 (S.D. Fla. Mar. 13, 2008)).  Therefore, plaintiffs' request that the statute of limitations be deemed tolled for the time their Motion for Circulation of Notice was pending will be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiffs' Motion to Strike the Declaration of Michael Nicoll or Portions Thereof, (doc. 24), is due to be granted in part

and denied in part; the Motion to Strike will be granted as to paragraph 68, and will be denied as to the remainder of Nicoll's Declaration.  Plaintiffs' Motion for Circulation of Notice of the Pendency of this Federal Overtime Collective Action Pursuant to 29 U.S.C. Section 216(b), (doc. 32), including their request that the statute of limitations be tolled, will be denied.  An Order denying plaintiffs' Motion for Circulation of Notice, (doc. 32), and granting in part and denying in part their Motion to Strike, (doc. 24), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 21st day of March, 2012.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE